SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
Alan R. Plutzik, Of Counsel (Bar No. 077785)
L. Timothy Fisher, Of Counsel (Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0770
Facsimile: (925) 945-8792

-and-

Richard A. Maniskas
D. Seamus Kaskela
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Attorneys for Plaintiff

ORIGINAL
FILED

MAY - 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD ZAKKAK, Individually and On
Behalf of All Others Similarly Situated,

                                    Plaintiff,

          v.

CUTERA, INC., KEVIN P. CONNORS, and
ROBERT J. SANTILLI,

                                    Defendants.

Case No. C07-02468

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1    Plaintiff, Edward Zakkak ("Plaintiff"), alleges the following based upon the investigation
2    by Plaintiff's counsel, which included, among other things, a review of the defendants' public
3    documents, conference calls and announcements made by defendants, United States Securities and
4    Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cutera
5    Inc. ("Cutera" or the "Company"), securities analysts' reports and advisories about the Company,
6    and information readily available on the Internet, and Plaintiff believes that substantial additional
7    evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for
8    discovery.

9    ## NATURE OF THE ACTION AND OVERVIEW

10    1.    This is a federal class action on behalf of purchasers of the common stock of Cutera
11    between January 31, 2007 and May 7, 2007, inclusive (the "Class Period"), seeking to pursue
12    remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

13    2.    Cutera is a global medical device company specializing in the design, development,
14    manufacture, marketing and servicing of laser and other light-based aesthetics systems for
15    practitioners worldwide.  The Company offers products which enable dermatologists, plastic
16    surgeons, gynecologists, primary care physicians and other qualified practitioners to perform non-
17    invasive aesthetic procedures for their customers.

18    3.    Prior to, and throughout the Class Period, the defendants represented to investors
19    that the Company was poised to experience 25 percent revenue growth for the first quarter of fiscal
20    year 2007.  The defendants issued a earnings per share ("EPS") expectation for the first quarter of
21    $0.21, and an EPS for the full-year of 2007 of $1.30.  In response to these positive statements by
22    the Company, shares of the Company's stock experienced a one day increase of $4.76 per share, or
23    16.5 percent, to close on February 1, 2007 at $33.38 per share.

24    4.    Throughout the Class Period, the Company continued to issue press releases that
25    highlighted positive news, although the Company failed to disclose any problems that it was
26    experiencing. For example, on March 28, 2007, the Company issued a press release which detailed
27    FDA clearance for a new product.  With Defendant Connors stating "we are entering into an
28    emerging aesthetic market segment currently estimated at approximately $150 million per year and

---

1   projected to be growing in excess of 30% per year," shares of the Company's stock increased in

2   value over the following days $2.59 per share, or 7.2 percent, to close on April 4, 2007 at $38.39

3   per share.

4       5.      However, Defendant Connors neglected to inform investors when he had the

5   opportunity, on March 28, 2007, that in a few days the Company was going to report a dreadful

6   financial and operational quarter.  The failure of Defendant Connors to do so explains why

7   investors were so shocked on April 5, 2007, when the Company issued a press release informing

8   investors that the Company now expected revenue of only $23 million for the first quarter of 2007,

9   significantly below the Company's earlier guidance of $26 million, provided months earlier.

10  Further, the Company stated that EPS for the quarter was only expected to be $0.11 to $0.13,

11  compared with the earlier guidance of $0.21 per share.

12      6.      On the release of this news, shares of the Company's stock immediately declined

13  $11.72 per share, or over 30.5 percent, to close on April 5, 2007 at $26.67 per share, on unusually

14  heavy trading volume.  The value of the Company's shares continued to decline over the following

15  two trading days, eventually closing on April 10, 2007 at $24.85 per share.  The cumulative effect

16  of the Company's shocking news over this three day trading period was a total decline of $13.54

17  per share, or a loss of over 35 percent of their value.

18      7.      Then on May 7, 2007, the Company further disclosed that its dismal operating and

19  financial results for the quarter was a primarily due to the unsuccessful implementation of a junior

20  sales program and extremely high employee turnover in the Company's sales force.  The program

21  was such a failure that the Company was forced to completely discontinue the program.  Further,

22  Defendant Connors disclosed that as a result of the failed program and high employee turnover,

23  many of the Company's representatives had been in their roles for less than six months.  As such,

24  these employees were under-trained and ill-equipped to sell the Company's products in the

25  marketplace.

26      8.      The following morning, shares of the Company's stock opened for trading at $23.00

27  per share, an overnight decline in value of $6.24 per share, or 21 percent, on unusually heavy

28  trading volume.  Throughout the day, shares of the Company's stock continued to decline in value,

1   and as of 1:00 p.m. EST, shares of the Company's stock were trading at $22.81 per share.

2         9.     The Complaint alleges that, throughout the Class Period, defendants failed to

3   disclose material adverse facts about the Company's financial well-being and business prospects.

4   Specifically, defendants failed to disclose or indicate the following: (1) that the Company's sales

5   force expansion, specifically with regard to the development of the junior sales program, was

6   unsuccessful; (2) that the Company was experiencing unusually high employee turnover in its sales

7   force; (3) that, as a result of the foregoing, the Company's sales force in North America was under-

8   trained and ill-equipped to sell the Company's products in the marketplace; (4) as such, and

9   contrary to earlier representations, the Company was not going to experience a 25 percent revenue

10   growth and was going to experience a dreadful quarter of revenue generation; (5) that the Company

11   lacked adequate internal and financial controls; and (6) that, as a result of the foregoing, the

12   Company's financial and operational projections were lacking in a reasonable basis when made.

13         10.    As a result of defendants' wrongful acts and omissions, and the precipitous decline

14   in the market value of Cutera's securities, Plaintiff and other Class Members have suffered

15   significant losses and damages.

16   **JURISDICTION AND VENUE**

17         11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

18   the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17

19   C.F.R. § 240.10b-5).

20         12.    This Court has jurisdiction over the subject matter of this action pursuant to Section

21   27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

22         13.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act,

23   15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein,

24   including the preparation and dissemination of materially false and misleading information,

25   occurred in substantial part in this Judicial District. Additionally, Cutera's principal place of

26   business is located within this Judicial District.

27         14.    In connection with the acts, conduct and other wrongs alleged in this Complaint,

28   defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

1    including but not limited to, the United States mails, interstate telephone communications and the

2    facilities of the national securities exchange.

3                                              **PARTIES**

4            15.    Plaintiff, Edward Zakkak, as set forth in the accompanying certification,

5    incorporated by reference herein, purchased Cutera common stock at artificially inflated prices

6    during the Class Period and has been damaged thereby.

7            16.    Defendant Cutera is a Delaware corporation with its principal place of business

8    located at 3240 Bayshore Boulevard, Brisbane, California

9            17.    Defendant Kevin P. Connors ("Connors") was, at all relevant times, the Company's

10   President and Chief Executive Officer ("CEO").

11           18.    Defendant Ronald J. Santilli ("Santilli") was, at all relevant times, the Company's

12   Chief Financial Officer ("CFO") and Vice President of Finance and Administration.

13           19.    Defendants Connors and Santilli are collectively referred to hereinafter as the

14   "Individual Defendants." The Individual Defendants, because of their positions with the Company,

15   possessed the power and authority to control the contents of Cutera's reports to the SEC, press

16   releases and presentations to securities analysts, money and portfolio managers and institutional

17   investors, i.e., the market. Each defendant was provided with copies of the Company's reports and

18   press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the

19   ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

20   positions and access to material non-public information available to them, each of these defendants

21   knew that the adverse facts specified herein had not been disclosed to and were being concealed

22   from the public, and that the positive representations which were being made were then materially

23   false and misleading.  The Individual Defendants are liable for the false statements pleaded herein,

24   as those statements were each "group-published" information, the result of the collective actions of

25   the Individual Defendants.

26

27

28

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Cutera is a global medical device company specializing in the design, development, manufacture, marketing and servicing of laser and other light-based aesthetics systems for practitioners worldwide. The Company offers products which enable dermatologists, plastic surgeons, gynecologists, primary care physicians and other qualified practitioners to perform non-invasive aesthetic procedures for their customers.

21.     Prior to, and throughout the Class Period, the defendants represented to investors that the Company was poised to experience 25 percent revenue growth for the first quarter of fiscal year 2007.  Throughout the Class Period, the Company continued to issue press releases that highlighted positive news, although the Company failed to disclose any problems that it was experiencing.

### Materially False and Misleading
### Statements Issued During the Class Period

22.     The Class Period begins on January 31, 2007.  On this day, the Company issued a press release entitled "Cutera Reports Fourth Quarter and Full Year 2006 Results; Company Sets New Records for Quarterly Revenue and EPS." Therein, the Company, in relevant part, stated:

> Cutera, Inc. (Nasdaq: CUTR), a leading provider of laser and other light-based aesthetic systems for practitioners worldwide, today reported financial results for the fourth quarter and twelve months ended December 31, 2006. Key financial highlights are as follows:
>
> **Fourth quarter 2006, compared with the same quarter in 2005:**
>
> - Revenue increased by $6.5 million, or 27%, from $24.0 million to $30.5 million.
> - GAAP diluted earnings per share for the fourth quarter of 2006 was $0.50, compared with $0.41 in the fourth quarter of 2005. Non-GAAP diluted earnings per share in the fourth quarter of 2006, which excluded stock-based compensation expenses, was $0.55.
> - Cash generated by operations increased 93%, from $7.6 million to $14.6 million.
>
> **Full-year 2006, compared with full-year 2005:**

- Revenue increased by $25.1 million, or 33%, from $75.6 million to $100.7 million.
- GAAP diluted earnings per share was $0.15. Non-GAAP diluted earnings per share in 2006, which excluded patent litigation settlement and stock-based compensation expenses, was $1.18.
- Cash and marketable investments balance improved to $108.1 million in 2006.

"We are very pleased with our fourth quarter revenue growth in all of our geographic regions and the overall improvements in operations," said Kevin Connors, President and Chief Executive Officer. "Our fourth quarter gross margin and operating margin improved to 73% and 29%, respectively. **We believe the strong revenue growth and improved leverage in our operating model, were primarily attributable to the strength of our multiple product offerings and investments in sales force expansion.** As a result of these factors, we generated $14.6 million of cash flow from operations in the fourth quarter and ended the year with over $108 million of cash and marketable securities."

Mr. Connors concluded, "2006 was an exciting year for Cutera -- we maintained strong revenue growth, resolved our patent litigation and experienced improved financial leverage in our business model. We are very excited about the opportunities for our company in 2007, as we continue to focus on developing new products and applications and expanding our distribution channels. We expect these efforts will enable us to continue increasing our market share in the growing market for light-based aesthetic systems."

**Guidance:**

**Management expects revenue for the first quarter and full-year 2007, to be approximately $26 million and $126 million, respectively. This represents a 25% growth from the same periods in the prior year.**

**For the first quarter and full-year 2007, we expect GAAP diluted earnings per share to be $0.21 and $1.30, respectively. For the same periods, non-GAAP diluted earnings per share, excluding stock-based compensation expenses, is expected to be $0.28 and $1.57, respectively.** [Internal footnotes omitted. Emphasis added.]

23.     Also on January 31, 2007, the defendants held a conference call with financial analysts and investors to discuss the Company's financial results, operations, and guidance for 2007. In particular, Defendant Santilli, in relevant part, stated:

RON SANTILLI, CFO, CUTERA, INC.: ... Moving to guidance, in the first quarter of 2007 we expect revenue of approximately $26 million with GAAP and non-GAAP net income per diluted share of approximately $0.21 and $0.28 respectively. For the full year of 2007 we expect revenue of approximately $126 million with GAAP and non-GAAP net income per diluted share of approximately $1.30 and $1.57 respectively.

* * *

KEVIN CONNORS, PRESIDENT, CEO, CUTERA, INC.: ... Thank you, Ron. As you can tell from our results, we're continuing to expand our global business. Our gross margin was particularly strong in the fourth quarter and we're now realizing the improved leverage of our operations. These have all contributed to higher profitability and cash flows from operations. During the past year we expanded our sales force in North America and now have one of the largest domestic sales teams in the light-based aesthetic market. We're continuing to see increased productivity from this expansion and will continue to monitor this performance as we plan to further expand our sales organization in 2007. ... We have developed a strong portfolio of products, [have] one of the largest direct sales organizations in North America and are continuing to focus on our international accounts. We believe these investments, together with our business strategy and significant financial resources, position Cutera for continued growth and profitability for the foreseeable future.

* * *

PHIL NALBONE, ANALYST, RBC: ... Ron, back to the cash situation, based on your projections for '07 what would you anticipate would be the incremental operating cash flow for the year?

RON SANTILLI: Certainly we should be able to generate something more than $30 million, which is similar to what we did this year ... overall, greater than $30 million I think is a fair way to look at this.

* * *

PHIL NALBONE: ... Kevin, can you walk us through the sales force headcounts, both in the United States and overseas? What happened sequentially, and what do you expect will be the headcount over the next few quarters?

KEVIN CONNORS: Right. In North America, Phil, the number of territories has been fairly constant the last couple of quarters at about 57. And I think on the last call we talked about some of the expansion we embarked upon at the beginning of this year, at the end of -- or the December month of '04 where we wanted to have a more junior sales force focus on a certain segment of the market. We didn't get the productivity we're looking for with that.

However, the portion of our sales force -- the senior portion of the sales force showed modest improvement in sales productivity. So we have since made modifications to the [alignment] of the sales organization, and we anticipate having improved productivity from the sales force as a whole. But we will continue to add on the space of 57 as we progress through the year. We're not giving any firm numbers at this point because we're continuing to work with sales management to lay out that plan.

* * *

ANTHONY PETRONE, ANALYST, MAXIM GROUP: Hi, guys. Great quarter. Just to start on the sales force side, was there any turnover during the quarter or did -- domestically or overseas?

KEVIN CONNORS: Nothing appreciable.

RON SANTILLI: Just normal turnover levels; nothing unusual.

24.    On February 1, 2007, the *Associated Press*, in addition to other news and financial publications, reported on the Company's first quarter guidance.  The article, entitled "Cutera sees 1st-quarter earnings of 21 cents per share, revenue growing by 25 percent," stated:

> Cutera Inc., which makes laser skin treatments used by dermatologists and plastic surgeons, said Wednesday it expects revenue to grow 25 percent in the first quarter of 2007 following an increase of 27 percent in the final quarter of 2006.
>
> The company forecast earnings of 21 cents per share for the quarter, or, 28 cents per share excluding stock options costs.
>
> Sales should reach $26 million, up 25 percent from the prior-year period, the company said.
>
> Analysts polled by Thomson Financial are looking for, on average, earnings of 27 cents per share on sales of $26.1 million. According to Thomson, the majority of analysts polled did not include stock options costs in their estimates.
>
> For the full year, the company expects earnings of $1.30 per share, adjusted earnings of $1.57 per share, and sales of $126 million.
>
> Shares rose $2.05, or 7.2 percent, to $30.67 in after-hours trading. The stock had closed up 59 cents, or 2.1 percent, at $28.62 on the Nasdaq.

25.    In response to these statements by, and reports concerning, the Company, shares of the Company's stock increased $4.76 per share, or 16.5 percent, to close on February 1, 2007 at $33.38 per share.

26.    Throughout the Class Period the Company continued to issue numerous press releases that highlighted positive news about the Company, although the defendants failed to disclose any problems that the Company was experiencing.  For example, on March 28, 2007, just prior to the end of the Class Period, the Company issued a press release entitled "Cutera Receives FDA Clearance for Its New Laser, Pearl, Using YSGG Technology."  Therein, the Company, in relevant part, reported:

> Cutera, Inc.(R) (Nasdaq: CUTR), a leading provider of laser and other light-based aesthetic systems for practitioners worldwide, today announced FDA clearance for its new laser, Pearl, with proprietary YSGG technology. Pearl is cleared for the treatment of wrinkles and represents the first application of the 2790 nm wavelength for cosmetic dermatology.

* * *

> "We chose the YSGG wavelength because our current and prospective customers want a more aggressive solution to complement our non-ablative, no-downtime procedures," said Cutera President and CEO, Kevin Connors. "By introducing Pearl, we are entering into an emerging aesthetic market segment currently estimated at approximately $150 million per year and projected to be growing in excess of 30% per year."

27.    On this positive news, shares of the Company's stock increased in value over the following days $2.59 per share, or 7.2 percent, to close on April 4, 2007 at $38.39 per share.

28.    The statements contained in ¶¶ 22, 23 and 26 were materially false and misleading when made because Defendants failed to disclose or indicate the following: (1) that the Company's sales force expansion, specifically with regard to the development of the junior sales program, was unsuccessful; (2) that the Company was experiencing unusually high employee turnover in its sales force; (3) that, as a result of the foregoing, the Company's sales force in North America was under-trained and ill-equipped to sell the Company's products in the marketplace; (4) as such, and contrary to earlier representations, the Company was not going to experience a 25 percent revenue growth and was going to experience a dreadful quarter of revenue generation; (5) that the Company lacked adequate internal and financial controls; and (6) that, as a result of the foregoing, the Company's financial and operational projections were lacking in a reasonable basis when made.

### The Truth Begins to Emerge

29.    On April 5, 2007, the Company issued a press release entitled "Cutera Reports Preliminary First Quarter 2007 Revenue and EPS." Therein, the Company, in relevant part, stated:

> Cutera, Inc. (Nasdaq: CUTR), a leading provider of laser and other light-based aesthetic systems for practitioners worldwide, today reported preliminary revenue and estimated earnings per diluted share for the first quarter of 2007.
>
> **Based on preliminary financial data, Cutera expects revenue to be approximately $23 million for the first quarter ended March 31, 2007, compared with our earlier guidance of $26 million provided on January 31, 2007.**
>
> **GAAP earnings per diluted share for the first quarter of 2007 are expected to be in the range of $0.11 to $0.13, compared with our earlier guidance of $0.21 provided on January 31, 2007.**
>
> "We continue to see strong growth in the laser and light-based aesthetic equipment market," said Kevin Connors, Cutera's President and CEO. He added, **"This quarter's shortfall was due primarily**

> to lower than expected productivity levels of our recent sales
> expansion. We are implementing specific initiatives to address
> this matter and remain confident in our ability to increase our
> revenue growth." [Emphasis added.]

30.    On the release of this news, shares of the Company's stock immediately declined $11.72 per share, or over 30.5 percent, to close on April 5, 2007 at $26.67 per share, on unusually heavy trading volume. The value of the Company's shares continued to decline over the following two trading days, eventually closing on April 10, 2007 at $24.85 per share. The cumulative effect of the Company's shocking news over this three day trading period was a total decline of $13.54 per share, or a loss of over 35 percent of their value.

31.    Then on May 7, 2007, the Company issued a press release entitled "Cutera Reports First Quarter Ended March 31, 2007 Results." Therein, the Company, in relevant part, stated:

> Cutera, Inc. (NASDAQ:CUTR), a leading provider of laser and other
> light-based aesthetic systems for practitioners worldwide, today
> reported financial results for the first quarter ended March 31, 2007.
> Key financial highlights are as follows:
>
> First quarter 2007, compared with the same quarter in 2006:
>
> - Revenue increased 12% from $20.8 million to $23.3 million.
> - Diluted earnings per share, which included stock-based
>   compensation expenses, was $0.12, compared with $0.08 in
>   the first quarter of 2006.
> - Non-GAAP diluted earnings per share was $0.18, compared
>   with $0.13 in the first quarter of 2006.
>
> "While we are pleased with our international revenue which grew
> 27% when comparing Q1'07 to Q1'06, the revenue growth in our
> U.S. business this past quarter did not meet our expectations," said
> Kevin Connors, President and Chief Executive Officer. He
> explained, **"We believe that the primary reasons for the poor
> performance of our North American sales team were the
> unsuccessful implementation of our junior sales program,
> unusually high sales employee turnover**, and disappointing results
> from PSS and other national accounts.
>
> We are taking the following strategic initiatives to improve our
> performance:
>
> 1) **We are continuing to restructure our sales-force with senior,
>    experienced sales people, and have discontinued the junior
>    sales program;**
> 2) We have dedicated additional sales personnel to our PSS
>    partnership to facilitate increased selling efforts; and,
> 3) We plan to expand our North American sales team and expect to
>    have 64 senior, experienced sales people by the end of 2007."

Mr. Connors continued, "As a result of our aberrant sales employee turnover, many of our North American salespeople have been in their roles for less than six months. We recognize that it will take time for new employees to achieve target sales productivity, but are confident that our model will support increased growth by the second half of this year.

\* \* \*

**Guidance:**

Management expects revenue for the second quarter and full year 2007 to be approximately $23 million and $110 million, respectively.

For the second quarter and full year 2007, we expect GAAP diluted earnings per share to be $0.08 and $0.81, respectively. For the same periods, Non-GAAP diluted earnings per share is expected to be $0.14 and $1.07, respectively. [Internal footnotes omitted. Emphasis added.]

32.     Upon the release of this news, shares of the Company's stock opened for trading the following morning at $23.00 per share, an overnight decline in value of $6.24 per share, or 21 percent, on unusually heavy trading volume. Throughout the day, shares of the Company's stock continued to decline in value, and as of 1:00 p.m. EST, shares of the Company's stock were trading at $22.81 per share.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the common stock of Cutera between January 31, 2007 and May 7, 2007, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Cutera's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may

be identified from records maintained by Cutera or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      (a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

      (b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Cutera; and

      (c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

39.    The market for Cutera's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Cutera's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Cutera's common stock relying upon the integrity of the market price of Cutera's common stock and market information relating to Cutera, and have been damaged thereby.

40.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Cutera's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

41.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Cutera's financial well-being and business prospects.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Cutera and its financial well-being and business prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**LOSS CAUSATION**

42.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.    During the Class Period, Plaintiff and the Class purchased common stock of Cutera

at artificially inflated prices and were damaged thereby. The price of Cutera's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

### SCIENTER ALLEGATIONS

44.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Cutera their control over, and/or receipt and/or modification of Cutera's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Cutera, participated in the fraudulent scheme alleged herein.

45.    Additionally, during the Class Period, and with the Company's stock trading at artificially inflated prices, Company insiders were able to sell 175,500 shares of Company stock for gross proceeds of $6,507,025, including over $5 million received in gross proceeds by the Individual Defendants. This inside trading is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| February 27, 2007 | John Connors | 7,500 | $36.69 | $275,175 |
| February 26, 2007 | Ronald J. Santilli | 10,000 | $37.22 | $372,200 |
| February 23, 2007 | David A. Gollnick | 35,000 | $37.16 - $37.42 | $1,305,000 |
| February 22, 2007 | Kevin P. Connors | 100,000 | $37.00 - $37.43 | $3,722,000 |
| February 21, 2007 | Robert J. Shine, Jr. | 3,000 | $37.35 | $112,050 |

| February 20, 2007 | Ronald J. Santilli | 10,000 | $37.06 | $370,600 |
| February 8, 2007 | Ronald J. Santilli | 10,000 | $35.00 | $350,000 |
| | **TOTALS:** | **175,500** | | **$6,507,025** |

### Applicability of Presumption of Reliance: Fraud On The Market Doctrine

46.    At all relevant times, the market for Cutera's common stock was an efficient market for the following reasons, among others:

(a)    Cutera's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Cutera filed periodic public reports with the SEC and the NASDAQ;

(c)    Cutera regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Cutera was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

47.    As a result of the foregoing, the market for Cutera common stock promptly digested current information regarding Cutera from all publicly-available sources and reflected such information in Cutera's stock price. Under these circumstances, all purchasers of Cutera common stock during the Class Period suffered similar injury through their purchase of Cutera common stock at artificially inflated prices and a presumption of reliance applies.

### NO SAFE HARBOR

48.    The statutory safe harbor provided for forward-looking statements under certain

1   circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

2   Many of the specific statements pleaded herein were not identified as "forward-looking statements"

3   when made.  To the extent there were any forward-looking statements, there were no meaningful

4   cautionary statements identifying important factors that could cause actual results to differ

5   materially from those in the purportedly forward-looking statements.  Alternatively, to the extent

6   that the statutory safe harbor does apply to any forward-looking statements pleaded herein,

7   defendants are liable for those false forward-looking statements because at the time each of those

8   forward-looking statements was made, the particular speaker knew that the particular forward-

9   looking statement was false, and/or the forward-looking statement was authorized and/or approved

10   by an executive officer of Cutera who knew that those statements were false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

14   49.    Plaintiff repeats and realleges each and every allegation contained above as if fully

15   set forth herein.

16   50.    During the Class Period, defendants carried out a plan, scheme and course of

17   conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

18   public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

19   other members of the Class to purchase Cutera common stock at artificially inflated prices.  In

20   furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them,

21   took the actions set forth herein.

22   51.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue

23   statements of material fact and/or omitted to state material facts necessary to make the statements

24   not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a

25   fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain

26   artificially high market prices for Cutera's common stock in violation of Section 10(b) of the

27   Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in the

28   wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Cutera's financial well-being, business relationships, and prospects, as specified herein.

53.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Cutera's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Cutera and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Cutera common stock during the Class Period.

54.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

55.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

1  defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

2  for the purpose and effect of concealing Cutera's financial well-being, business relationships, and

3  prospects from the investing public and supporting the artificially inflated price of its common

4  stock.    As demonstrated by defendants' overstatements and misstatements of the Company's

5  financial well-being, business relationships, and prospects throughout the Class Period, defendants,

6  if they did not have actual knowledge of the misrepresentations and omissions alleged, were

7  reckless in failing to obtain such knowledge by deliberately refraining from taking those steps

8  necessary to discover whether those statements were false or misleading.

9      56.    As a result of the dissemination of the materially false and misleading information

10  and failure to disclose material facts, as set forth above, the market price of Cutera common stock

11  was artificially inflated during the Class Period.   In ignorance of the fact that market prices of

12  Cutera's common stock were artificially inflated, and relying directly or indirectly on the false and

13  misleading statements made by defendants, or upon the integrity of the market in which the

14  common stock trades, and/or in the absence of material adverse information that was known to or

15  recklessly disregarded by defendants, but not disclosed in public statements by defendants during

16  the Class Period, Plaintiff and the other members of the Class acquired Cutera common stock

17  during the Class Period at artificially high prices and were damaged thereby.

18      57.    At the time of said misrepresentations and omissions, Plaintiff and other members of

19  the Class were ignorant of their falsity, and believed them to be true.   Had Plaintiff and the other

20  members of the Class and the marketplace known the truth regarding the problems that Cutera was

21  experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class

22  would not have purchased or otherwise acquired their Cutera common stock, or, if they had

23  acquired such common stock during the Class Period, they would not have done so at the

24  artificially inflated prices which they paid.

25      58.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

26  Act and Rule 10b-5 promulgated thereunder.

27      59.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the

28  other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's common stock during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

60.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.    The Individual Defendants acted as controlling persons of Cutera within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.    As set forth above, Cutera and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 8, 2007      SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP

Alan R. Plutzik
Alan R. Plutzik, Of Counsel (Bar No. 077785)
L. Timothy Fisher, Of Counsel (Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0770
Facsimile: (925) 945-8792

-and-

Richard A. Maniskas
D. Seamus Kaskela
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

## CERTIFICATION

I, (print name) *Edward Zakkak* ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the Complaint, authorizes its filing, and retains Schiffrin Barroway Topaz & Kessler, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.  Plaintiff's purchase and sale transaction(s) in the **Cutera, Inc. (Nasdaq: CUTR)** security that is the subject of this action during the Class Period is/are as follows :

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| Common Stock | 100 | B | | 3/23 07 | 35.63 |
| Common Stock | 100 | B | | 3/26/07 | 35.80 |
| Common Stock | 100 | B | S | 4/5/07 | 26.46 |
| | | | | | |
| | | | | | |

**(Please list additional purchase and sale information on a separate sheet of paper, if necessary)**

5.  Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.  During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below: _____

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this *4th* day of *May*, 200*7*.

*Ed Jakkak*
Signature

*EDWARD ZAKKAK*
Print Name